UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 16-cr-20004-JES-JEH |
| ) | |
| JOSE LOPEZ, ) | |
| ) | |
| Defendant. ) | |

## ORDER AND OPINION

This matter is now before the Court on Defendant's Motion (Doc. 68) and Supplemental Motion (Doc. 77) for New Trial, and the United States' Response (Doc. 78) thereto. For the reasons set forth below, Defendant's Motions (Docs. 68, 77) are DENIED.

### BACKGROUND

*United States v. Lopez*

The facts surrounding Defendant Lopez's conviction and sentence are largely recounted in the Seventh Circuit's opinion, and are restated here in summary fashion. *United States v. Lopez*, 907 F.3d 537 (7th Cir. 2018). In 2014, law enforcement agents intercepted cellular communications after securing a warrant from a Maryland state court judge. The communications revealed that Heliodoro Moreno planned to transport a large quantity of illegal drugs from Texas to Defendant Lopez in Illinois, using George Salinas as a courier. Lopez arranged for his friend Andrew Linares to pick up the illegal drugs from Salinas and bring them to him. Law enforcement intercepted the drugs at an Illinois bus stop, arrested Salinas and Linares, and seized 10 ounces of methamphetamine from Salinas. In 2015, the government developed a source who initiated three controlled purchases of illegal drugs from Lopez, who

1

was later charged along with others in this case. Lopez was indicted for, *inter alia*, knowingly attempting to possess 50 grams or more of methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii). *Id*. at 540.

Prior to trial, Lopez moved to suppress two cell phone calls, arguing the Maryland state court order violated 18 U.S.C. § 2518(4)(b) by failing to specify the nature and location of the communications facilities or the place where the authority to intercept is granted. The district court disagreed and denied Defendant's motions, and the Seventh Circuit affirmed the denial of Defendant's suppression motions on appeal. *Id*. at 540, 543.

The trial evidence showed Lopez used the telephone number identified in the Maryland state court order and the United States and multiple witnesses confirmed the number as Lopez's. The intercepted calls revealed that Morena asked Lopez if he could promote "whiskey" where he lived, and Lopez responded, "a lot is moving here." Moreno and Lopez also discussed the quantity of drugs ("onions") and cost ("$1,000 per onion"). Moreno also confirmed Lopez knew Salinas and told Lopez Salinas would contact him. The next day, Salinas and Lopez spoke about Salinas bringing a shipment of drugs from Texas to Illinois. During the next three days, Moreno, Salinas, and Lopez made plans for Salinas to travel by bus from Houston to Illinois to deliver 10 ounces of drugs to Lopez. The plan was for Salinas to stay in Illinois until he received $4,000 from Lopez, after which Lopez would settle up with Moreno for the remaining balance. To effectuate the plan, Lopez asked his friend Linares to pick up Salinas at the bus stop. *Id*. at 540–41.

On October 2, 2014, Salinas went to a Houston bus station and met one of Moreno's workers, who took him to pick up a cellophane-wrapped package which Salinas hid in his crotch area before boarding the bus to Rantoul, Illinois. Salinas periodically sent text messages to Lopez

over the 24-hour trip updating him on the status of the delivery. On October 3, 2014, Linares, who knew Salinas only as "old man," waited at the Rantoul bus stop for Salinas' arrival. Earlier that morning, Lopez reminded Linares to pick up Salinas and told Linares of the status of Salinas' bus. He confirmed the pickup location and directed him to take Salinas to Lopez's home. When Linares arrived at the bus stop, he sent a text message to Lopez stating he had arrived, and it looked "all clear." Lopez responded, "see you in a bit." Salinas informed Lopez when the bus arrived, and Lopez responded that Linares was at the bus stop and instructed Salinas not to say anything. *Id.* at 541–42.

On the day prior, Baltimore DEA agents informed agents in Illinois about the intercepted phone calls, and by that evening Illinois agents had obtained a search warrant for prospective cell phone location data. The Illinois DEA agents used the cell phone location data and physical surveillance to identify the bus Salinas was traveling on and followed it to Rantoul. Law enforcement agents arrested Salinas and Linares after Salinas exited the bus and entered Linares' car. Salinas gave them the package, which was later tested and determined to contain 276 grams of methamphetamine. While in custody, Salinas and Linares consented to searches of their cell phones, which revealed text messages to and from Lopez about the planned drug transaction and call records showing multiple attempted calls from Lopez after their arrest. Both phones had contact information for Lopez with Lopez's cell phone number. Law enforcement waited to arrest Lopez and completed three controlled buys from Lopez in 2015. In January 2016, law enforcement executed a search warrant on Lopez's home, seizing address books with contact information for Salinas and Linares, digital scales, ingredients used in the manufacture of cocaine and methamphetamine, and vacuum heat sealers and other drug packaging equipment.

Following the three-day jury trial, the jury convicted Lopez on all counts, and determined the offense involved 50 grams or more of methamphetamine. *Id*.

**Defendant's Post-Trial Motions**

On May 15, 2019, Defendant Lopez filed a pro se Motion for New Trial Pursuant to Rule 33 of the Federal Rules of Criminal Procedure. Doc. 68. Therein, Defendant asserted newly discovered evidence of District Judge Colin Bruce's ex parte communications with the United States Attorney's Office violated Lopez's due process rights because the evidence showed Judge Bruce was biased against him and in favor of the United States. *Id*. The Court subsequently appointed counsel for Defendant Nixon, and on June 12, 2020, Lopez's counsel filed his Supplemental Motion for New Trial. Doc. 77. Therein, Lopez argues Judge Bruce's ex parte communications show Judge Bruce had a personal interest in the outcome of Lopez's trial, in violation of Lopez's due process rights. *Id*. at 26–27. Defendant concludes by asking the Court to vacate his sentence and set the matter for resentencing before a different judge. *Id*. at 27.

On July 6, 2020, the United States filed its Response. Doc. 78. Therein, the United States asserts Defendant's arguments have already been rejected by the Seventh Circuit in *United States v. Williams*, 949 F.3d 1056 (7th Cir. 2020). Additionally, the United States argues he cannot obtain the relief he seeks under Rule 33 of the Federal Rules of Criminal Procedure. *Id*. at 18–22.

## LEGAL STANDARD

"[T]he Due Process Clause clearly requires a fair trial in a fair tribunal, before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy v. Gramley*, 520 U.S. 899, 904–05 (1997) (internal quotations and citations omitted). "Where the judge has a direct, personal, substantial, or pecuniary interest, due process is violated." *Franklin v. McCaughtry*, 398 F.3d 955, 959 (7th Cir. 2005). However, "[t]he general presumption is that

judges are honest, upright individuals and thus that they rise above biasing influences." *Franklin*, 398 F.3d at 959. That presumption may be rebutted by showing, for example, that the temptation to be biased is so strong "we may presume actual bias." *Id*. at 959–60 (quoting *Del Vecchio v. Ill. Dep't of Corr.*, 31 F.3d 1363, 1375 (7th Cir. 1994) (en banc)). The presumption may also be rebutted in rare cases where litigants produce evidence of actual bias. *Id*. at 960 (citing *Bracy v. Gramley*, 520 U.S. 899, 905 (1997)). Thus, to prove disqualifying bias, "a petitioner must offer either direct evidence or 'a possible temptation so severe that we might presume an actual, substantial incentive to be biased.' " *Id*. (citing *Del Vecchio,* 31 F.3d at 1380). "Absent a 'smoking gun,' a petitioner may rely on circumstantial evidence to prove the necessary bias." *Id*. (citing *Bracy v. Schomig*, 286 F.3d 406, 411–12 (7th Cir. 2002)).

In evaluating bias claims under this framework, courts ask "whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.' " *Williams*, 949 F.3d at 1061 (quoting *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 881 (2009), *Rippo v. Baker*, 137 S. Ct. 905, 907 (2017)). Although this standard does not require proof of actual bias, "bad appearances," standing alone, do not meet this threshold. *Del Vecchio*, 31 F.3d at 1371 ("If the question truly is whether a defendant received a fair trial, bad appearances alone should not require disqualification to prevent an unfair trial. What may appear bad to an observer, especially in hindsight, may not have influenced—or, more importantly, may not have had any real possibility to influence—the judge in his decision-making process."); *see also Suh v. Pierce*, 630 F.3d 685, 691 (7th Cir. 2011).

Applying this standard, courts have identified four circumstances where it has been met. First, a judge who is actually biased against a defendant violates the defendant's due process rights. *See Franklin*, 398 F.3d at 961 (finding that the judge's writings demonstrated he decided

5

the issue of the defendant's guilt long before trial). Second, a judge who earlier had "significant, personal involvement as a prosecutor in a critical decision regarding the defendant's case" violates the Due Process Clause when he presides over the defendant's trial. *Williams v. Pennsylvania*, 136 S. Ct. 1899, 1905 (2016) (stating such circumstance creates "an impermissible risk of actual bias"). Third, a judge's financial interest in the outcome of a case is disqualifying. *In re Murchison*, 349 U.S. 133, 136 (1955) ("[N]o man is permitted to try cases where he has an interest in the outcome."); *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813, 824 (1986) (state court justice's involvement in civil suits against insurer while deciding appeal was a 'direct, personal, substantial, and pecuniary" interest requiring disqualification). Fourth, a judge must disqualify himself when he becomes "personally embroiled" with a litigant. *Mayberry v. Pennsylvania*, 400 U.S. 455, 465 (1971).

## DISCUSSION

In Defendant's Motions, he asserts District Judge Colin Bruce's ex parte communications with the United States Attorney's Office violated Lopez's due process rights because the evidence showed Judge Bruce was biased against him and in favor of the United States. Doc. 77, at 26–27. However, the same evidence Defendant offers in support of his Motions was considered by the Seventh Circuit in *United States v. Williams*, 949 F.3d 1056 (7th Cir. 2020). A brief discussion of that case follows.

### *United States v. Williams*

The Seventh Circuit addressed Judge Bruce's ex parte communications in *Williams*. There, the defendant was charged with obstruction of commerce by robbery. Williams pleaded not guilty and proceeded to a jury trial before Judge Bruce. The jury found Williams guilty. After the verdict but prior to sentencing, Judge Bruce's ex parte communications were disclosed, and

Williams's case was reassigned to Judge Darrow, who sentenced him to 180 months in the Bureau of Prisons. On appeal, Williams argued Judge Bruce's ex parte communications violated his due process rights and the federal recusal statute. *Williams*, 949 F.3d at 1058–59. The court first addressed Williams's due process argument. *Id*. at 1061. After identifying the four circumstances where courts have found an unconstitutional potential for bias under the Due Process Clause, the Seventh Circuit observed that Williams's case "does not fit into these buckets." *Id*. at 1061. Rather,

> Williams has not provided any evidence of actual bias. To the contrary, the Special Committee found "no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." It is undisputed that none of the ex parte communications concerned Williams's case. Nor is there any evidence that Judge Bruce had a pecuniary interest in the outcome, previously worked on the case as a prosecutor, or became "personally embroiled" with the parties.

*Id*. at 1061–62.

The court also rejected Williams's argument that an exchange[1] between Judge Bruce and the prosecutor in his case showed Judge Bruce's personal bias in favor of the government, reasoning there was nothing improper about the on the exchange, which occurred before both parties, on the record, in open court, and outside the presence of the jury. *Id*. at 1062. Additionally, the court rejected Williams's claim that Judge Bruce's preexisting relationship with members of the Office, standing alone, violated Williams's due process rights, noting Williams had presented no evidence to overcome the presumption that judges rise above biasing influences. *Id*. (citing *Del Vecchio*, 31 F.3d at 1372). Accordingly, the Seventh Circuit found Judge Bruce did not violate Williams's due process rights by presiding over his trial. *Id*. at 1063.

---

[1] The essence of the conversation involved the prosecutor stating she was not trying to be "sneaky" and Judge Bruce responding by stating he did not think the prosecutor to be "sneaky." 949 F.3d at 1062.

7

**Application of *Williams* to Lopez's Case**

In Lopez's Motions, he argues Judge Bruce violated his due process rights because he had a personal interest in the outcome of Defendant's trial. Doc. 77, at 26. As previously stated, in order for Lopez to prevail on his due process claim, he must rebut the presumption that judges rise above biasing influences. *Franklin v. McCaughtry*, 398 F.3d 955, 959 (7th Cir. 2005). To do so, he must either produce evidence of actual bias, *Bracy v. Gramley*, 520 U.S. 899, 905 (1997), or a possible temptation so severe that an actual, substantial incentive to be biased may be presumed, *Franklin*, 398 F.3d at 959. When evaluating claims under this framework, courts ask "whether the average judge in his position is 'likely' to be neutral, or whether there is an unconstitutional 'potential for bias.' " *Williams*, 949 F.3d at 1061.

Here, the only evidence Lopez produces to support a finding of actual bias in his case is Judge Bruce's ex parte reply email to USAO paralegal Klayer, which stated "everything will be fine." Doc. 77, at 1. The email was in response to Klayer stating she was using new trial presentation software and "praying all goes as planned." Doc. 77-1, at 1. Klayer was the paralegal assisting the USAO with Lopez's trial. Defendant argues this email shows "that he wants the prosecution of [Defendant] to go as planned." Doc. 77, at 2. However, aside from the ex parte nature of this communication, there is nothing improper about Judge Bruce's comments. Rather, when this communication is viewed in the proper context, it indicates Judge Bruce was reassuring a paralegal who was nervous about using new software during trial. The email does not, as Defendant suggests, support an inference that Judge Bruce had a personal interest in the outcome of Lopez's case.

Defendant also cites the Seventh Circuit's decision in *United States v. Atwood*, 941 F.3d 883 (7th Cir. 2019) in support of his due process argument. Doc. 77, at 25. However, *Atwood*

addressed whether Judge Bruce's violation of the federal recusal statute was harmless error. *Id*. at 885. Here, however, Defendant Lopez has not raised a claim that Judge Bruce violated the federal recusal statute or that his violation was not harmless. Thus, *Atwood* is distinguishable from the present case.

On the other hand, in *Williams* the Seventh Circuit did address a defendant's due process claim based on the same ex parte emails at issue here. Like the exchange at issue in *Williams*, Judge Bruce's email to paralegal Klayer does not support a finding of actual bias against Lopez. *Cf. Williams*, 949 F.3d at 1062. Additionally, the Seventh Circuit appeared to rely upon the Special Committee's report in both *Atwood* and *Williams*, which found "no evidence and received no allegation that Judge Bruce's conduct or ex parte communications impacted any of his rulings or advantaged either party." *Williams*, 949 F.3d at 1061–62, *Atwood*, 941 F.3d at 885. Moreover, like in *Williams*, Defendant has not produced any evidence to suggest Judge Bruce had a pecuniary interest in the outcome of Lopez's case, previously worked on the case as a prosecutor, or became personally embroiled with the parties. *Williams*, 949 F.3d at 1062. Accordingly, Defendant's due process claim fails for the same reasons set forth in *Williams*.

## CONCLUSION

For the reasons set forth above, Defendant's Motions (Docs. 68, 77) are DENIED.

Signed on this 25th day of August, 2020.

>s/ James E. Shadid
>James E. Shadid
>United States District Judge